UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2022 MAY 16  A 11: 58

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

AMY WALKER,

    **Plaintiff,**

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., EQUIFAX
INFORMATION SERVICES, LLC, I.C.
SYSTEM, INC., NATIONAL CONSUMER
TELECOM AND UTILITIES
EXCHANGE, INC., and TRANS UNION
LLC,

    **Defendants.**

Civil Case No. 1:22-cv-299

*JURY TRIAL DEMANDED*

## COMPLAINT

Plaintiff Amy Walker ("Plaintiff" or "Ms. Walker"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Experian Information Solutions, Inc., Equifax Information Services, LLC, I.C. System, Inc., National Consumer Telecom and Utilities Exchange, Inc., and Trans Union LLC as follows:

### PRELIMINARY STATEMENT

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq.* ("Fair Credit Reporting Act" or "FCRA") and 15 U.S.C. §§ 1692, *et seq.* ("Fair Debt Collection Practices Act" or "FDCPA").

2. Experian, Equifax and TransUnion are America's three major consumer reporting agencies ("CRAs").

1

3.      The FCRA demands of CRAs that they utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

4.      Consumer reporting agencies that create consumer reports, like Equifax and TransUnion are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like I.C. System, particularly where a consumer makes a dispute about information reported.

5.      Also when a consumer like Plaintiff disputes the accuracy of information through the agencies, those disputes are transmitted to the party furnishing the information, here I.C. System. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6.      When such dispute investigations are ongoing and credit reporting of the subject account is also taking place, the furnisher of information must note that the consumer has disputed the information when transmitting account data to CRAs.

7.      Plaintiff brings claims under Section 1681e(b) against Experian, Equifax and Trans Union because they reported about Plaintiff inaccurate information regarding an I.C. System account. When Plaintiff disputed the inaccuracies, Experian did not reasonably investigate, also violating Section 1681i.

8.      The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory

Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how the CRA Defendants have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. The CRA Defendants have been repeatedly sued by consumers, sanctions by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had they followed that advice and heeded those warnings, Plaintiff would not have been harmed.

9.  Likewise, I.C. System violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from the agencies and failed to reasonably investigate those disputes. Instead, discovery will show all I.C. System did was consult its own records about the account and confirm to the agencies the inaccurate information it was already reporting.

## JURISDICTION & VENUE

10. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d) and 28 U.S.C § 1331.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

12. Plaintiff Amy Walker is an adult individual and residing in Ozark, Alabama. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

13. Defendant Trans Union LLC ("TransUnion") is a limited liability company authorized to do business in the State of Alabama through its registered agent in Montgomery, Alabama.

14. TransUnion is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f). TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

3

15. TransUnion disburses such consumer reports to third parties under contract for monetary compensation.

16. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation authorized to do business in the State of Alabama through its registered in Montgomery, Alabama.

17. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

18. Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

19. Experian disburses such consumer reports to third parties under contract for monetary compensation.

20. Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company authorized to do business in the State of Alabama through its registered agent in Montgomery, Alabama.

21. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

22. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

23. Defendant National Consumer Telecom and Utilities Exchange, Inc. ("NCTUE") is a foreign corporation headquartered in Atlanta, Georgia.

24. NCTUE is a is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). NCTUE is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

25. Defendant I.C. System, Inc. ("IC System") is a foreign corporation authorized to do business in the State of Alabama through its registered offices in Montgomery, Alabama. It is a "Furnisher" governed by 15 U.S.C. § 1681s-2. IC System is also a "Debt Collector" under 15 U.S.C § 1692a(6).

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the CRA Defendants' Creditor-Customers*

26. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

27. Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

28. Section 1681i(a), on the other hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency of the directly... of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file ... before the end of the 30-day period[.]

U.S.C. § 1681i(a)(1)(A).

29. Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

30. It has long been the law that a CRA, such as Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g., Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368,

at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

31. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997).

32. As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

33. Further, as the CRA Defendants are aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . .." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

7

34. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

35. Today, furnishers such as IC System have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2. But while the CRA Defendants' duties were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

***Ms. Walker Discovers Defendants' Misreporting and Unlawful Debt Collection***

36. On or around May 24, 2021, Ms. Walker received a collection notice from IC System seeking to collect over $500 from Ms. Walker regarding an AT&T Direct TV account.

37. Ms. Walker has never had an account with AT&T Direct TV.

38. Ms. Walker has not had a TV account in her name for the past approximately ten years.

39. Ms. Walker later discovered that Experian was erroneously reporting the IC System collection account ("IC Account") about her.

40. Ms. Walker disputed the IC Account to IC System, AT&T, and Experian.

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

41. During her dispute to AT&T, Ms. Walker learned the IC Account was associated with an address on Columbia Road.

42. Ms. Walker never lived on Columbia Road.

43. Ms. Walker also provided a power bill to AT&T to prove her residence and that the IC Account did not belong to her.

44. In or around June 2021, and as part of her disputes, Ms. Walker completed an identity theft package and mailed it to AT&T and IC System to show that the IC Account did not belong to her.

45. Ms. Walker disputed the IC Account to Experian multiple times during the summer of 2021.

46. Also in June 2021, Ms. Walker requested Experian, Equifax, and TransUnion to freeze her credit.

47. In or around July 2021, Ms. Walker filed an Identity Theft Report with the FTC, referencing the IC Account that did not belong to her.

48. In or around August 2021, Ms. Walker again disputed Experian's misreporting of the IC Account.

49. In or around August 2021, Ms. Walker requested her credit report from Equifax but Equifax refused to provide her with a copy of her report, claiming it was unable to locate her.

50. On or around August 24, 2021, Experian informed Ms. Walker that it refused to remove the account and found it to be accurate reporting.

51. In or around September 2021, Ms. Walker sought to purchase a car.

52. Upon discovering a significant drop in her credit score, which was due to the misreporting of the IC Account, Ms. Walker felt embarrassed and decided not to purchase a car as she did not believe she would be able to obtain favorable financing terms.

53. In or around November 2021, Ms. Walker discovered Experian and TransUnion were reporting the IC Account.

54. In or around December 2021, Ms. Walker received her credit report from NCTUE and discovered that NCTUE was misreporting the underlying AT&T account about her as well.

55. In 2021, Ms. Walker searched for jobs, including submitting several applications online.

56. Due to the misreporting of the IC Account, Ms. Walker stopped applying for jobs as she was embarrassed and humiliated by the misreporting of the IC Account and believed she would not able to qualify for jobs.

57. This in turn caused Ms. Walker economic hardship as she struggled to earn income to support herself.

58. In or around March 2022, Ms. Walker disputed the IC Account with Equifax, Experian, and Trans Union.

59. In or around March 2022, Ms. Walker requested her credit report from Experian and Equifax, yet both Experian and Equifax refused to provide her a copy of her report.

60. To date, Ms. Walker has not received any notice from IC System acknowledging that the IC Account does not belong to her.

**COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**(Against Experian, TransUnion, and NCTUE)**

61. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

10

62. Experian, NCTUE, and TransUnion each violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff' credit reports and credit files they published and maintained concerning Plaintiff when they reported the inaccurate account information regarding the IC Account.

63. As a result of Experian, NCTUE, TransUnion's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, lost time, confusion, humiliation and other mental and emotional distress.

64. The violations by Experian, NCTUE, and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Experian, NCTUE, and TransUnion were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

65. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian, NCTUE, and TransUnion pursuant to 15 U.S.C. § 1681n and § 1681o.

66. As a result of Experian, NCTUE, and TransUnion's failure to comply with the requirements of the FCRA, Plaintiff suffered distinct actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

### COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)
### (Against Experian)

67. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

68. Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from each of Plaintiff' credit files.

69. Experian violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received with Plaintiff's disputes.

70. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff as to LVNV Funding.

71. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon a lawful reinvestigation.

72. As a result of Experian's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, confusion, lost time, and other mental and emotional distress.

73. The violations by Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

74. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian pursuant to 15 U.S.C. § 1681n and § 1681o.

75. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681g
### (Against Equifax and Experian)

76. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

77. Experian and Equifax violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all of the Plaintiff's information that it maintained at the time Plaintiff requested it.

78. Experian and Equifax violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all the sources of the information maintained in the Plaintiff's file at the time of the request.

79. Experian and Equifax violated 15 U.S.C. § 1681g(a)(3) by failing to identify each person that procured the Plaintiff's consumer report within the prior one or two years, as applicable, at the time of the request.

80. Experian and Equifax's conduct, actions, and inactions were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Experian and Equifax were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

81. As a result of Experian and Equifax's violations, the Plaintiff suffered damages including confusion, lack of information, frustration, the inability to determine the sources of that information, the inability to determine the identities of each person who procured her file, as well as lost time.

82. Experian and Equifax's failure to disclose all information in its possession related to the Plaintiff, the source of this information, and the identities of each person that procured the information maintained in their database about the Plaintiff was an act or omission committed in violation of the rights conferred to the Plaintiff by Congress as set forth by 15 U.S.C. § 1681g.

83. As a result, Experian and Equifax are liable to the Plaintiff for statutory damages, in an amount ranging from $100 to $1,000 to be determined by the jury, as well as punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Experian and Equifax were negligent, entitled the Plaintiff to recover actual damages pursuant to 15 U.S.C. § 1681o.

84. Because Experian and Equifax's conduct was willful, Plaintiff is entitled to uncapped punitive damages in addition to the amounts described in the previous paragraphs.

**85.** As a result of Experian's and Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

### COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(A) and (B)
### (Against IC System)

86. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

87. On at least one occasion within the past two years, by example only and without limitation, IC System violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

88. On one or more occasions within the past two years, by example only and without limitation, IC System violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

89. Based on the manner in which the CRAs responded to – or did not respond to – Plaintiff's disputes, representing that furnisher(s) had "verified" the supposed accuracy of its

reporting, Plaintiff alleges that Experian and TransUnion did in fact forward Plaintiff's dispute via an ACDV to IC System.

90. IC System understood the nature of Plaintiff's disputes when it received the ACDVs from, Equifax and TransUnion.

91. Notwithstanding the above, IC System follows a standard and systemically unlawful process when they receive the ACDV dispute. Basically, all IC System does is review its own internal computer screens for the account and repeat back to the ACDV system the same information it already has reported to the CRAs.

92. When IC System receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

93. As a result of IC System's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

94. IC System's FCRA violations were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, IC System was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from IC System pursuant to 15 U.S.C. § 1681n and § 1681o.

96. As a result of IC System's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

## COUNT FIVE – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e
### (Against IC System)

97. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

98. Defendant IC System's May 24, 2021 letter falsely stated that Ms. Walker owed a debt on the IC Account.

99. As detailed above, Ms. Walker did not have any connection to the IC Account.

100. Despite Ms. Walker's repeated disputes to IC System that the IC Account did not belong to her, IC System continued to claim that the IC Account did belong to her and that she owed the debt.

101. Defendant IC System's letter to Ms. Walker was a false representation of the character, amount, and legal status of a debt in violation of the FDCPA. 15 U.S.C. § 1692e(2)(A), (10).

102. Defendant IC System's continued claims that Ms. Walker owed the debt for the IC Account after her disputes was also a false representation and deceptive practice in violation of the FDCPA. 15 U.S.C. § 1692e.

103. IC System's violations of the FDCPA caused Ms. Walker to worry about her financial situation and the impact on her credit, as well as caused her stress and frustration, and to feel dejected and worthless.

104. Ms. Walker also lost time in her efforts to investigate why IC System had contacted her and alleged that she owed a debt.

105. As a result, Ms. Walker is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against IC System pursuant to 15 U.S.C. § 1692k.

106. As a result of IC System's failure to comply with the requirements of the FDCPA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, statutory damages, in an amount to be determined by the jury.

## JURY DEMAND

107. Plaintiff requests a jury trial on all claims.

## PRAYER

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in her favor for actual, punitive, and statutory damages as pled; attorney's fees and costs; pre-judgment and post-judgment interest to Ms. Walker; and such other relief as the Court deems just and appropriate.

DATED: May 12, 2022.

Respectfully submitted,

Micah S. Adkins
(ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
5400 Lyndon B. Johnson Fwy., Suite 1200
Dallas, Texas 75240
Telephone (214) 974-4030
MicahAdkins@ItsYourCreditReport.com

Leonard A. Bennett (*pending admission pro hac vice*)
Kevin A. Dillon (*pending admission pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
*COUNSEL FOR PLAINTIFF*
*AMY WALKER*